UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FRANK BOGGIO,

          **Plaintiffs**

v.                                    Case No. 1:10-cv-445-HJW

USAA FEDERAL SAVINGS BANK,

          **Defendant**

### ORDER

This matter is before the Court upon the defendant's "Motion for Summary Judgment" (doc. no. 15), which plaintiff opposes. Defendant ("USAA") has filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. nos. 20-21). Having fully considered the record, including the parties' briefs and exhibits, the Court will <u>grant</u> the defendant's motion for the following reasons:

**I. Background and Factual Allegations**

The relevant facts are largely undisputed, with a few minor exceptions noted herein. Frank and Sarah Boggio married in Ohio in 1999 and moved to Texas in 2002. Due to his two army deployments overseas, Frank gave Sarah control of their finances through two powers of attorney ("POAs") that authorized her to act for him (doc. nos. 21, ¶ 4; 15-3, Boggio Dep. at 14-15, 20, 23).[1] All their finances were handled jointly, including a joint bank account with USAA (Boggio Dep. at 13-16).

By November of 2006, the Boggios had separated and thereafter agreed to

---

[1] Frank Boggio acknowledges the existence of these POAs, but has not provided copies of them in discovery (Boggio Dep. at 15).

divorce. Frank was honorably discharged in March of 2007. At that time, he "packed up and left without attending to any financial wrap-up from the marriage" (doc. no. 21, ¶ 6). He returned to the Cincinnati area to work. USAA was not notified of the Boggio's separation or Frank's move (doc. no. 21, ¶ 10). Sarah Boggio thereafter took care of the sale of the couple's jointly-owned home in Texas, including signing the paperwork to conclude the sale. Frank Boggio acknowledges that Sarah had authority to sign that paperwork (Boggio Dep. at 20-21).

On May 29, 2007, Sarah purchased a 2007 Honda Civic from a dealer in Texas (doc. no. 21, ¶ 11, citing Complaint, Ex. A). The check to Bankston Honda to pay for the car reflects the signatures of both Frank and Sarah Boggio (doc. no. 15-4 at 8). The car was insured in both their names, initially by Geico, and then by USAA (doc. nos. 21 at ¶¶ 13-14; 15-5; 15-6).

Over a year later, on December 28, 2008, the Boggios signed a "Separation Agreement" expressly listing the USAA car loan for the 2007 Honda as a marital debt and allocating responsibility for payment of the car loan to Sarah (doc. no. 21, ¶ 15, citing Complaint, Ex. B). Frank acknowledges that, at that time, he was aware that Sarah had bought the 2007 Honda while they were married (Boggio Dep. 33, 36-37). On June 5, 2009, the Family Court for Boone County, Kentucky approved and entered the dissolution decree (doc. no. 21, ¶ 17). USAA was not notified of the Boggio's divorce. After Sarah defaulted on the loan, USAA reported the default to the national credit reporting agencies.

Meanwhile, in October of 2009, Frank Boggio (while employed in Ohio) applied

for credit but was declined by several retailers. He consulted his divorce counsel, who in turn, informed USAA on October 8, 2009, of the Boggios' divorce (doc. no. 1, Ex. B) and wrote to the national credit agencies alleging error on Franks Boggio's credit report with respect to the default on the Honda car loan (Ex. I-K). The letters all indicated that "Mr. Boggio denies any liability or responsibility for this loan" and that "the principal borrower should be listed as Sarah Louise Boggio" (Id.) USAA indicates it investigated the credit agencies' reports (Galindo Decl., ¶ 7, Ex. D).

On November 9, 2009, USAA sent a letter to Frank Boggio indicating that, based on his request for review of the disputed information, it had reviewed his account (doc. no. 15-4 at 7). USAA provided plaintiff with a copy of the check bearing his signature (and Sarah's signature) for the purchase of the 2007 Honda (Id; Lincoln Decl. ¶¶ 5, 7). USAA's letter informed Frank Boggio that it could not change or delete the disputed information based on the information before it.

In light of the assertion in counsel's letter to USAA indicating that Sarah did not have "permission to enter into any credit relationship with any creditor" at that time, USAA requested a police report and/or fraud affidavit from Frank Boggio. USAA indicates that if a person wants a fraud investigation, USAA will initiate a "second level investigation" and request the member to file a police report (Lincoln Decl. ¶¶ 8-9).[2] USAA's log report from March 11, 2010 reflects that USAA requested

---

[2] Although plaintiff underlines this fact (i.e. USAA's recitation of its own policy) in red, thereby "disputing" it, he does not explain any basis for doing so. He has also not offered any evidence or testimony regarding the standard of care for credit reporting investigations.

that plaintiff submit a police report, but plaintiff's counsel advised that plaintiff would not file one (¶ 28, citing Lincoln Decl. ¶ 9). Frank Boggio acknowledges that he did not file a police report (doc. no. 21, ¶ 27; Boggio Dep. at 51) or a fraud affidavit before filing suit. Thus, on March 12, 2010, USAA indicated in its internal records that the "Item is a Civil issue and should be handled in Court between the Member and his Spouse" and closed the dispute (no. 21, ¶ 29, citing Lincoln Decl. ¶ 10).

On July 6, 2010, plaintiff filed a one-count complaint alleging that USAA violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681s-2(b), by failing to verify and/or report accurate credit information to the national credit reporting agencies. Thereafter, he executed a fraud affidavit in September of 2010, contending that Sarah signed his name to the bank check for the 2007 Honda without his permission. USAA indicates that "in accordance with its policy, the car loan default was removed from [plaintiff's] credit report immediately" (doc. no. 21, ¶ 30). Although plaintiff's counsel underlines this fact as "disputed" without explanation (doc. no. 21 at ¶ 30), plaintiff acknowledged at deposition that, after he filed the fraud affidavit, USAA removed the default information regarding the 2007 Honda loan from his credit report (Boggio Dep. at 64-65).

II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no

> genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### III. Issues Presented

The issue before the Court is whether USAA is entitled to summary judgment on plaintiff's claim that USAA violated FCRA, at 15 U.S.C. §1681s-2(b), by failing to verify and/or report accurate credit information to national credit reporting agencies.

### IV. Analysis

Plaintiff contends that USAA violated 15 U.S.C. §1681s-2(b) by failing to conduct a "reasonable investigation" of the defaulted car loan that USAA reported to the major credit reporting agencies and by "falsely verifying" the account as belonging to him as a co-obligor rather than to the real borrower, his ex-wife Sarah,

thereby damaging his credit (doc. no. 1, ¶¶ 17-18).

The United States Supreme Court has observed that "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 53 (2007). Under FCRA, the duties of furnishers of information (such as USAA) upon notice of dispute include:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; . . . .

15 U.S.C. § 1681s-2(b)(1)(A)-(D). The Court of Appeals for the Sixth Circuit recognizes a private cause of action for wilful violation of this statute. Bach v. First Union Nat. Bank, 149 Fed.Appx. 354, 358-359, 2005 WL 2009272, *3 (6th Cir. 2005); Downs v. Clayton Homes, Inc., 2004 WL 253363, *2 (6th Cir. 2004) (assuming that private right of action existed under subsection (b)). Indeed, "the majority consensus among the courts that have addressed the issue is that 15 U.S.C. § 1681s-2(b) created a private right of action by a consumer against a data furnisher." Sweitzer v. American Express Centurion Bank 554 F.Supp.2d 788, 794 (S.D.Ohio 2008); see also, Ferrarelli

v. Federated Fin. Corp. of America, 2009 WL 116972 (S.D.Ohio 2009)("This Court concludes that a private right of action does exist under section 1681s-2(b) of the FCRA"); Stafford v. Cross Country Bank, 262 F.Supp.2d 776, 782-83 (W.D.Ky 2003)) (same).

"Upon receiving notice from a credit reporting agency that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation." Bach, 149 Fed.Appx. at 358-359. A consumer may "recover damages for a willful violation of 15 U.S.C. § 1681s-2(b)(1)(A)-(D)." Id. The United States Supreme Court has interpreted the term "willful" to include both a "knowing" violation of FCRA as well as a "reckless disregard" of FCRA requirements. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007). "[D]istrict courts that have considered the issue have consistently recognized that the creditor's investigation must be a reasonable one." Johnson v. MBNA America Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004) (collecting cases); and see, Ferrarelli, 2009 WL 116972 at *5.

The evidence in the present case reflects that USAA's investigation was reasonable under the circumstances. USAA points out that the evidence of record establishes its verification of the Boggio's joint account information, its verification of the fact that Frank Boggio's name was on the bank check for the purchase of the 2007 Honda, and the fact that his apparent signature on the bank check was visually

similar to his actual signature on the bank signature card (doc. no. 15-4 at 8-9). The record also establishes USAA's verification of the existence of Geico Insurance, followed by USAA insurance, for the Honda in Frank Boggio's name, listing the USAA lien (doc. no. 15-5; 15-6). The evidence of record substantiates USAA's assertion that it conducted a reasonable investigation of the defaulted car loan that it reported to the credit reporting agencies. See Chiang v. Verizon New England, Inc., 595 F.3d 26, 38 (1st Cir. 2010) (affirming summary judgment on FCRA claim because plaintiff "failed to raise a genuine issue of material fact that the investigation was unreasonable").

Although plaintiff contends that only Sarah signed the credit application and purchase agreement for the 2007 Honda and that she was the actual purchaser (doc. no. 17 at 20), these allegations do not create a genuine dispute of material fact regarding the reasonableness of USAA's investigation for purposes of FCRA. USAA verified that the bank check for the purchase of the 2007 Honda bore the signatures of both Frank and Sarah Boggio. Although Frank Boggio disputed the debt and Sarah's authority to sign his name, he declined to provide a fraud affidavit for USAA to initiate a fraud investigation.

USAA points out that, as part of its standard procedures, it routinely requests either an affidavit of fraud or a police report in order to initiate a "level two" fraud investigation. However, plaintiff declined to provide the requested documents – until after he filed this lawsuit. When he finally did submit a post-litigation "fraud affidavit," USAA cleared the default information from his credit report. Moreover,

plaintiff (who is employed as a police officer) concedes that it was reasonable for USAA to request some verification of fraud before initiating a fraud investigation. Although he alleges in his complaint that USAA acted "intentionally and willfully," he acknowledged at deposition that he did not believe "USAA did anything to intentionally put [him] in this situation" (Boggio Dep. at 82). As plaintiff himself appears to recognize, the evidence of record simply does not substantiate any wilful or reckless violation of FCRA by USAA. See, e.g., Akalwadi v. Risk Management Alternatives, Inc., 336 F.Supp.2d 492 (D.Md. 2004)(holding that to prevail on FCRA claim, consumer must show that defendant knowingly and intentionally did not investigate the disputed debt in conscious disregard of the consumer's rights).

USAA points out that "over a year after plaintiff became aware of a credit report which listed him as an obligor for a car loan obtained by his wife in both their names, and after acknowledging the marital obligation in his subsequent divorce decree, plaintiff sought to hold USAA responsible for inaccurate credit reporting after his wife defaulted on the loan obligation" (doc. no. 15 at 1). The separation agreement/dissolution decree expressly listed the Honda loan as a marital debt. Plaintiff acknowledged at deposition that the purchase of the Honda and the loan were disclosed in that document, which recites that plaintiff had an opportunity to review his credit report prior to signing the decree under oath (doc. no. 15, Ex. B). He conceded "I believe at that time, yes, it was showing on my credit report." (doc. no. 15, Ex. C at 37). Plaintiff's execution of the divorce decree with full knowledge that the Honda car loan appeared on his credit report amounts to ratification of his

signature on the bank check, even though he now contends that Sarah actually signed his name. "An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." Restatement (Second) of Agency, Ratification. "[R]atification of an unauthorized act may be express, as by spoken or written words, or implied, resulting from any act, words, or course of conduct on the part of the principal which reasonably tends to show an intention to authorize the act retroactively." 7 Am.Jur. Proof of Facts 2d 675, § 3 "Ratification of Forged or Unauthorized Signature."

The "essential prerequisite to a principal's ratification of an unauthorized act is that at the time of the ratification the principal have knowledge of all material facts." Capital Dredge and Dock Corp. v. City of Detroit, 800 F.2d 525, 530 (6th Cir.1986) citing Restatement (Third) of Agency, § 4.00. The record reflects that Frank Boggio had knowledge of all the material facts necessary to ratify his signature on the bank check, i.e. he knew Sarah had bought the car and that the car loan was listed on his credit report. When her default affected his credit, he notified USAA of her alleged "forgery," but refused to verify his claim with a fraud affidavit or police report. Nonetheless, USAA investigated his allegations and reasonably concluded the matter was a "civil issue that and should be handled in Court between Member and his Spouse." The evidence pointed to by USAA shows that there are no genuine disputes of material fact and that USAA is entitled to summary judgment on plaintiff's claim for wilful violation of FCRA.

**V. Oral Argument Not Warranted**

**Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The Court finds that the pleadings and exhibits are clear on their face and that oral argument is not warranted here.**

**Accordingly, the defendant's motion for summary judgment (doc. no. 15) is GRANTED; this case is DISMISSED and TERMINATED on the docket of this Court.**

**IT IS SO ORDERED.**

                                                                                       s/Herman J. Weber
                                            **Herman J. Weber, Senior Judge**
                                            **United States District Court**